Mr. Loeb Mr. Chief Justice, and may it please the Court, in this case, the government seeks to transform a violation of a car rental agreement into a rule where unlisted drivers have no ability to even invoke the Fourth Amendment. The government's proposed rule should be rejected for at least three reasons. First, ignoring a person's privacy expectations when he locks his personal property in a car's locked trunk with the permission of the renter is contrary to this Court's reasonable expectation of privacy test, which looks to privacy expectations and not contract terms and not property rights. And while the contract violation alleged here does not negate Fourth Amendment rights, it's notable that Mr. Byrd's presence in the car, and the government does not dispute this, was not improper. His storing of his personal items in the trunk was not even a contract violation. Ginsburg-McGillivray Could he have been the renter, given his criminal record? Perhaps not, Your Honor, but he was given permission by the renter to store his items in the locked trunk, and the government does not argue that that was impermissible. Suppose he had been just a passenger and the renter was there. Likewise, even if he is just a passenger, if the person who has rented the car gives him permission to lock his own personal property in the trunk of the car, he has a reasonable expectation of privacy that strangers will not rummage through his personal property in that locked trunk. Roberts. What if the budget rental agreement had, you know, in big letters on it, if anyone has stopped driving this car, they must consent to police search? You know, budget doesn't want to be involved in promoting criminal activity. Goldstein, Your Honor, the — first of all, Mr. Berg didn't sign the agreement. So that allows him to escape from those provisions? Moreover, those provisions would not define what a person's constitutional rights are. This Court has looked to reasonable expectations of privacy. Okay. Well, what if Reed told him, look, I don't — you know, I know your background. I don't want you transporting flak jackets and heroin in the trunk of this car that I've rented. That would be different than that he was not given permission by the renter to store his personal property in the trunk. But instead, in this record here — So then in that case, the police — he — the police could go through the trunk without a warrant? I don't think so, Your Honor. Still — So Reed tells him, don't put stuff in my trunk, and — but you can take the car? I'm sorry. In your hypothetical where he's barred from doing that, I would agree that he doesn't — that he may — doesn't have permission to use the trunk, and he may be more like the passengers in the Rakes case. It would be a little — I would still say he has a Fourth Amendment right to invoke there, but a more difficult situation. So — but if the police have access to, going back to my first hypothetical, the rental agreement, which they probably would. You've got to have the rental agreement in the car. They say, let me see your license or title. He gives them the budget agreement, and the agreement says you must consent to police search if you're stopped. What about that? Again, that kind of contract of adhesion, you wouldn't ordinarily read. Contract of adhesion? Well, you go into a rental agreement, it pops up on a little screen where they tell you to use their electronic signature thing and sign off on it. These are terms that you're not going to use. They don't want to rent the car to somebody who's going to put illegal stuff in the  I don't — or, you know, they want to — it's their car. They want to cooperate with the police in terms of what can be used in their car. I don't — well, put aside the contract of adhesion. What then? In other words, he knows that budget doesn't want him to have an expectation of privacy in the trunk. Again, Your Honor, the — there could be a contract violation in that context, but there would not be a complete inability to invoke the Fourth Amendment. So he knows that the owner of the car, the budget, does not want to give him any privacy in the trunk. The police know that the owner of the car does not want to give him any privacy in the trunk, and yet, nonetheless, he has an expectation of privacy?  Well, I know it's a harder case, but I'm trying to get to the limits of your theory. Well, in our theory, you have a person in Mr. Byrd's position. He's been given permission to use the trunk, to lock his items in the trunk. No, no. I'm asking about my case. Yes. So in that scenario, it's very different in that he's not been given permission in the trunk, and maybe under Rakes, you'd say that it's like the glove compartment in Rakes where he's never been given access to it, doesn't have his personal property in the trunk, and maybe the government's argument about Rakes' relevance might be different in that scenario. But what if the rental agreement said that if any unauthorized person uses the car, we consent to a search by the police? Here, if they had called Budget, and Budget had said, as owner, we authorize the search, and maybe that they could have searched the car, they didn't do that. So if they had called Budget and Budget had said, it's okay to search our car because Mr. Byrd is not authorized to drive it, that would be all right? It's – but that would be a different scenario where, if you look to this Court's Chapman case, they said an inchoate right to possibly eject someone from a leased apartment would not provide a basis for denying someone the ability to invoke the Fourth Amendment. So in that case, the State argued the State argued the State argued the State argued the Fourth Amendment. Kennedy, Justice Alito can protect its own question, but could you answer his question? Would that be all right? If they phoned the car rental company and the car rental said, okay to search, yes or no, could you answer that, please? I think the owner can grant them consent to search the car. Well, if that's the case, I don't know what Budget's policy is on this. It might well be Budget's policy that we want the police to search a car if they stop it and it's driven by somebody who is not authorized to drive it. And, Your Honor, if there is such a provision, the consumers can decide whether they want to rent a car with Budget where it has a sort of Fourth Amendment free zone provision and has that sort of forced consent and a contract of adhesion. They don't have that kind of provision there. Breyer. Breyer. I just wanted to get the legalism, if I can, out of it for a minute. Bill and his three college friends are sitting in the living room. Dad says, Bill, can we use the car this evening? Yes, Dad says to the four, but Bill is the driver. I want it clearly understood. Nobody else can drive this car but Bill. Okay? Got it? Yep. Now, Jim, with Bill's permission, drives the car, et cetera, et cetera. Well, does Jim have the expectation of privacy? He would, Your Honor. He would. He would, even though he heard Dad say nobody. But Bill can drive this car. Dad might have claims he could bring against the friend who drives the car. So what's the rule? When somebody is driving a car and they know they don't have permission from the owner, they still have an expectation of privacy and the police can't search it? Everybody knows. What's the rule? Is that the rule? Well, the rule also takes into account. I mean, who doesn't? I don't have this expectation of privacy. I've never been near the car. All right. So you're not going to say, you know, I mean, who in that case doesn't have expectations? A thief? If you look at the real life expectations, do you expect a stranger to be able to rummage through the car in that circumstance? So when you're in possession and control the car and you have the key to the car, and in our case, when you've been given permission. I never expect a stranger to rummage through the car. So if I'm sitting there or lying in the back seat asleep because I'm tired and everybody else has left the car, you're saying I have an expectation of privacy? I was just a friend of the driver and he said you can sleep on the back seat. So I have an expectation. More like the expectation of the passengers in Rakes, where they were never given access to the glove compartment. They never put their personal property in the glove compartment. Here, in this case, the government concedes that Mr. Byrd was given permission and it was not a violation of the contract for him to store his personal property in the trunk. So his testimony is that he put his clothing in the trunk, and if you look at the video at minute 48, you see the police rummaging through his personal property in the trunk. So even if you're just a passenger, if the renter or your friend gives you permission to lock your own personal property in the trunk, and here it's not even a contract violation, it's not against dad's wishes, it's not against budget's wishes, right, for him to have his property in the trunk. Sotomayor, could I ask why? Kennedy, Well, he had his property in the trunk because he was the driver. And the case is presented as if the car was just lent to him for a few minutes. What happened was he waited right outside the rental car place while she went in and signed the agreement. It was very clear that he didn't want to be on the car rental, and it was very clear that he was going to be the only one to drive it. Well, Your Honor, that puts Mr. Byrd in the same position of if there's an apartment which says no sublets will be allowed without the authorization of the owner, and they know the owner doesn't like to approve them, but the renter goes ahead and sublets the house or the apartment to a family. Under the government's view, because there's been a violation of that lease, there can be no expectation of privacy. Breyer, here, let me be straightforward as to what my problem is. I see your point. In this case, you have a point. But what worries me is what's our rule going to be? Do we have now subsection 18378 of Lefebvre, which is called the car rental cases? You see, Fourth Amendment law is too complicated, in a sense, already. So you look for principles or rules that will allow policemen and others to understand what it is they're supposed to do. And your rule in this case is? Our rule is that if you are given permission by the renter to store items of your personal items in the trunk, you have a reasonable expectation of privacy in it, especially when, as the government concedes, his presence in the car. How will the government know that? How will the police know that? Police come up to a rental car, they ask for your license and your registration. You give them your license and a rental agreement that doesn't list you. How are they supposed to know the owner gave you permission? But the police run to the same exact scenario if I am borrowing a friend's car and given permission to use the car in the trunk, the exact same scenario. The same difficulties apply in the rental situation as the friend scenario. Alito, you mentioned the rental situation. What about this? A homeowner is going away for a long weekend, arranges with a teenager in the neighborhood to come in and walk and feed the cat and spend quality time with the cat, but says, under no circumstances may you bring anybody else into the house. But the teenager says, okay, fine, and then goes ahead and gives the keys to a friend who uses the house to sell drugs. And the police come in and they conduct a search. Can that trespasser claim that his Fourth Amendment rights were violated? So this Court has carved out an exception for the criminal trespasser, for the car thief, for it's an exception for someone's mere presence in the house or the apartment or the car is itself a criminal act, the mere presence is criminal, and where it's an intrusion on another person's privacy. So the friend coming in who's a, in your hypothetical, a criminal trespasser under the Rakes footnotes 9 and 12 would be considered perhaps in a category of people who cannot invoke Fourth Amendment rights. Alito, what is the difference between the kid who's selling drugs from the house and Mr. Byrd who's using the car to transport drugs? Very different. First of all, Mr. Byrd's presence in the car is not a violation of the contract. It is not a criminal trespass. It is not a tort. The government concedes his presence in the car, and the language used in Rakes and in Jones was, is the presence wrongful. And the government concedes his presence in the car is not wrongful. Likewise, Mr. Byrd's driving the car is itself not lawful. He's not a car thief when he does so. There may be private privacy. I brought you there because you mentioned apartment rental, house rental. Do any of our decisions involve a case where the owner of the property says no rentals, no subleases, but the renter subleases anyway? I thought it was assumed in our cases that the guest was there with the permission of the owner. Well, Jones itself was a rental case, and there's only a discussion that Jones was there with the permission of his friend, the renter, not with the owner. But it wasn't anything in that case about the owner having said no, as there is in this case, nobody but the one we authorized. That's correct, Your Honor. But I think this Court's Chapman case is instructive on that. So there the lease did bar the renter from moving in and immediately setting up distillery equipment, and the State argued that because he did so, the landlord could evict him at any moment, and therefore, he can't have Fourth Amendment rights to invoke in that circumstance. And this Court said no, even though there could be an inchoate right of the landlord to evict him if they knew about the violation of the lease, that does not undermine his Fourth Amendment rights. And same here. There may be the budget has an inchoate right to bring a contract action or a tort action against Mr. Byrd, but until they do so, just like in the sublet example, if the owner finds out about the impermissible sublet and then brings an action of eviction, then you can say at that point on that there is a diminished expectation of privacy that the subleasers have in that situation. Sotomayor, Mr. Rakus, our decision in the reception area inSOFA, I'm sorry, Counselor our decision in Rakus was premised on a number of things, most importantly that the defendant didn't claim any possession of privacy interest in the goods searched or in those things in the glove compartment, etc. Why? What's happened here? Meaning, is your client – how did the information that he was given permission to store things in the trunk come before the court? Well, in the suppression hearing, his testimony was that he had the permission of his read and that he had the permission to lock his personal items in the trunk and that he did store his clothing in the car and in the trunk. And then we see in the video the government rummaging through the trunk and just the way that this Court has warned that – that – that – So I'm having – I'm having a problem with this case, which is, why are we here? Meaning, once he admitted that the goods in the trunk were his, I don't know why that doesn't give him automatic standing to challenge the search. I thought in Rakus it was the fact that the defendants repeated three or four or five different times that the defendants claimed no proprietary interest in the goods searched. That's different than this case, isn't it? Exactly. Exactly. So why are we here on this legal issue at all? We're here because the government and the Third Circuit has advocated a blanket rule that if you're an unlisted driver, you never have an expectation of privacy.  If you're an unlisted driver, you never have an expectation of privacy in the property. And absent probable cause, there's no right to search. So why are we here? We agree 100 percent on that, Your Honor. You're here because you lost the law. We lost the law. But I'm not – she's absolutely right, Counselor, but I'm asking, why are you pitching this case on the automobile exception? Why don't you just argue the straightforward point that the whole – this whole discussion is about who has the right to challenge a search and without probable cause. Right, Your Honor. All right? If you're claiming an interest in the property at issue, he's claimed it, he testified, he has a right. So now we go to a suppression hearing. Right. And he testified regarding the clothing he put in the car, and you see them rummaging through the trunk when they open that locked trunk. So that's undisputed here. He didn't – just to be clear, on the record, he did not claim ownership of the drugs or the body armor. Of course, they're charging him with possession of the same, but it's enough that he has own – his own personal property is in that trunk, the clothing, and that the government is rummaging through that locked trunk. The people have an expectation, a reasonable, objective expectation of privacy in spaces that are not – If I can follow up on Justice Sotomayor's question, and Justice Breyer's, in terms of what's the clear line we could draw here. You've raised two theories on which you might prevail. One, a property law theory, essentially, as I understand it, that possession is good title against everybody except for people with superior title. And I understand that. That's an ancient common law rule. I can go back and find that in treatises all the way back to Joseph's story. Or I can do this reasonable expectation of privacy test. And that's what we've been struggling with so far. What's the – we have to ask what the nature of the contract is and the terms of the contract. We might want to look at the nature of the relationship between Mr. Byrd and Ms. Reed. There was a lot of debate in the briefs over whether they're girlfriend and boyfriend or fiance or maybe common law marriage and someone's cheating on someone else. All of that's in the briefs we have to contend with. Then we have the question whether the test is even an empirical or normative question. Do we look at what the reasonable expectations of privacy are by social science data, get my law clerks to go do that, or do we just announce normatively what we think it ought to be? Should it depend on regional and cultural norms across the country? Gosh, it's very complicated. Professors Baud and Stern, among many others, suggest maybe we ought to look back at that property test again. What do you think? We think the property interest here, the right that Mr. Byrd would have had to bring a trespass action, demands a recognition of his right to invoke the Fourth Amendment. And it's a very clear and simple rule. So the old adage is possession is nine-tenths of the law. And as you state in your question, that has roots in the common law going back to the 1600s and 1700s. The problem is the problem is that the property interest here is a very clear recognition of his right to invoke the Fourth Amendment. And so, in the case of the property interest, the property-based concepts that Justice Gorsuch was stating would say that criminals have that kind of property interest. No, Justice Kagan. So the Restatement 895, which deals with this under the Restatement of Tort II, says just the principle that was articulated, that mere possession would allow you to bring a trespass action against anyone else who invaded it. But if you look at comment H there, it says where someone is clearly a thief, the thief is against the third party, the stranger who's invading the space. I mean, the problem with going down this property route is that we go off in search of a type of case that almost never arose, if it ever did arose, arise, at common law, where an unauthorized sub bailee brings an action for trespass to chattel against a law enforcement officer. When would that ever have happened in 18th century America? Never. It's your right to bring a trespass action against a stranger. The fact that you can exclude the stranger and bring a trespass action against him is what supports your property right under the Constitution. It's hard enough to find the case where it's the stranger, where it's the private party stranger. But that's not what we have here. We have a party who has lawful rights that no private party had, which was to stop this vehicle, and it's not contested that this was a lawful, that this was a lawful search. I mean, I'm sorry, a lawful stop. The police rights is confined. Ordinarily, they need reasonable suspicion to extend the search. They need probable cause to search the car. And the locked trunk has always been deemed sacrosanct, requiring a minimum probable cause. So the standard here is a simple one under common law. He has the right to exclude others, and it bolsters also the reasonable expectation of privacy. Breyer. Is this your rule? Is this – I'm still trying to think of the rule. A person who has possession of and is driver of a car, whoever he is, has a reasonable expectation in privacy of the parts of that car, unless in driving or possessing it, or he's committing a crime. Yes, Your Honor, that's our bright-line rule. Do you accept that? Easy to apply, yes. That is supported by both common law principles and objective expectations of privacy, that when you're in a car and you're in sole possession and control of it, the troopers themselves recognize he was no criminal. They wouldn't put a car thief back behind the wheel of the car, give him complete control in the words of Trooper Long, and let him drive it up the highway to the next exit to pull over. They didn't – they treated him very differently. So a person who goes into a house and has all the indicia of being the owner, as far as anyone else can tell, or has a right to be there, also can exclude the police from a search, unless in being in that house he is committing a crime. Unless you're committing a criminal trespass or, in the case of the car, the car thief, and especially when you were locking your personal goods in the trunk, you have an expectation of privacy. And that's basically the foundation of the expectation of privacy is the right to exclude others. And Jones and Rakus have said that, and it's very clear that both under common sense of who you can exclude and under common law, where you have a right to possess and exclude, that Mr. Bird has a Fourth Amendment right that he can invoke in this case. Alitoson uses the word property numerous times, but the word property doesn't appear in the Fourth Amendment. It talks about effects, which is defined by Samuel Johnson's dictionary as goods or movables. So is it your argument that any property interest whatsoever falls within the definition of effects if we are going to go back to an originalist interpretation of the Fourth Amendment? So would it include contingent interests? Would it include future interests? If somebody has left me a car in a will and the car is searched, do I have the right to bring a Fourth to the does that implicate my Fourth Amendment rights? I think if the common law recognizes your right to repleven or to trespass against a stranger, then both under common law and common sense, that it makes sense to recognize the right to invoke a Fourth Amendment right. And still, we're not saying that the police don't have adequate tools here. If they had reasonable suspicion to extend the stop and further investigate, if they had probable cause or if they had consent, they could have searched the trunk of the car, but they did not have that here. Kagan, Mr. Loeb, we've always said that there's a normative component to expectations of privacy. In other words, there are those expectations that society is prepared to recognize as reasonable. So here you have, at the very least, a person who's violated important contract terms, terms that are of some significance to the owner of the property, as well as a person who is engaged in conduct that frustrates law enforcement in various ways. Get behind the wheel, you're not the person who's authorized to be here, the police don't know who you are. And, you know, this is the facts of this case provide a good example of how unauthorized driving can frustrate law enforcement. So why is it that society should be prepared to recognize this conduct as reasonable? Because society recognizes that when you put your personal items in a locked space, if you put it in Chadwick in a locked footlocker, you have an expectation of privacy regarding it, and the courts don't look behind this to say, well, are you really engaged in criminal conduct, are you a bad guy? The question is a question of if you're sitting in a car which you have locked and you can lock the car and you've locked the trunk of your personal items, society recognizes an expectation of privacy in that. And Mr. Berg, when he was sitting in the Ford Fusion after he was pulled over by the police, is not wrongfully present. If someone is wrongfully present and committing a criminal act by being present, that's different. But the government conceded he was not wrongfully present in the car, he had his personal items in the trunk of the car, he was not wrongfully present in the car.  if you have a private matter, someone has a expectation of a reasonable expectation of privacy in those circumstances, and that expectation is bolstered by the common law, which says he has a right to sue others for trespass if they intruded upon that car. If that's true, clearly he can at least in minima invoke the Fourth Amendment. Like to reserve. Ginsburg, you made something of the familial relationship between the person who rented the car and Berg. Suppose it had not been a familial relationship. Suppose it was just a neighbor or one of the friends that Justice Breyer brought up. Does the familial relationship really matter? No, Your Honor. It simply bolsters the expectation. If you have a family member or a close friend or here's someone you've been living with for 15 years and you exchange, as the record establishes here, exchange cars on a regular basis, it's reasonable to believe that you can drive the other person's car, that you can lock materials in their trunk when you're driving, and that you'll have an expectation of privacy when you do so. I'd like to reserve the remaining of my time for rebuttal. Thank you. Roberts. Thank you, counsel. Mr. Feigin. Thank you, Mr. Chief Justice, and may it please the Court. To challenge the search in this case, Petitioner has the affirmative burden to prove a connection to Budgett's car that would justify treating it as his effect for purposes of the Fourth Amendment. He can't do that when he sent Reed into the rental office alone to rent a car he never could have rented, subject to terms that didn't allow him to drive it, and then he took the keys and drove off with it. The very ---- Sotomayor, let's assume he wasn't a criminal. Let's assume it was the renter's son, not the wife, because there's an exception for spouse in the contract. Is that son in the same position as Mr. Reed? I think as a matter of law he would be. Obviously, I think as Justice Kagan pointed out, the actions here were even more unreasonable. But the reason why we would ---- I don't disagree with you, but I'm asking a question which is, police can search a car when they have probable cause, correct? Yes. And they're free to do that of any car driven even by a licensed driver, correct? Yes. Or a licensed co-driver on a rental agreement. So really the issue here before us is when are the police permitted to search without a warrant, without probable cause? And that's what I see the issue as, because if we rule that someone without permission can, has no expectation of privacy even when the renter has given it to them, then what we're authorizing is the police to stop every rental car and search every rental car without probable cause that might be on the road. Well, Your Honor, I think there's no evidence that there is a widespread practice of that, because for one thing it's impractical. Well, the police here said we stopped him because he was driving a rental car, he was doing something totally illegal. Every driving school teaches you to put your hands at a 10-to-2 angle, and they found that suspicious. And they waited until he made a turn that was not authorized by the traffic laws. So to say that there isn't a practice is a little bit disingenuous, Mr. Fagan. But the question I really have is, should we be creating exceptions to the most basic of Fourth Amendment rights, that of probable cause, before police intrude in searching at all? And we're doing it under the guise not of, was the search legal under the Fourth Amendment, but whether someone has standing to even question that. Because this is a standing case, correct? It's – it refers to a doctrine the Court has sometimes referred to as standing. And, of course, the question in any standing case is whether someone has the right under the Fourth Amendment to treat something as their own effect or their own home. Now, here, the very thing that he's relying on to do is to say, well, we know that he was told that he could use the trunk and put things in it, whether he's a passenger or a driver. Once he says that and the owner of – and the renter of the car agrees with him, I'm still not sure what's missing, why that claim of an interest is inadequate. Well, let me say a couple of things, Your Honor. First of all, Rakes was quite clear that a passenger doesn't get rights in the trunk of a car, and simply putting items in the trunk of a car, even with the permission of someone else, doesn't give one rights in the trunk. The person may have rights in their own items within the trunk, but they don't have rights in the trunk itself. For example, if you think about Minnesota v. Carter, where this Court held that the owner of the suitcase was the owner of the suitcase, the owner of the drugs, let's assume he came in and said, I was the owner of the suitcase. So, Your Honor, there are cases like this in the courts of appeals, and they've handled this different ways, but if someone comes in and says, I don't have rights in the car, but I do have rights in the suitcase that was searched in the car, most courts will address that and find that the defendant did have rights in the suitcase. But here he's asserting rights in the car. He has never made a claim of any other sort, and under footnote 1 of Rakes, it's too late for him to do so now. Sotomayor, I thought he made claims to the trunk, that he said, I was given permission to store my things in the trunk, and that's what I did. Your Honor, the trunk is simply part of the car. He hasn't made some claim that his rights were violated as to some effect he stored in the trunk. What he's claiming is that the car can be treated as his effect for Fourth Amendment purposes, but the very event on which he's relying to establish his Fourth Amendment rights was contrary to the reasonable and well-known legal norms of a major commercial industry. He not only wants this Court to say that Reed handing him the keys and him driving off in the car was acceptable, he wants this Court to say that it reflected such a deep-seated societal understanding that it should give rise to Fourth Amendment rights. Alito, there was a violation of one of the terms of the contract. We asked Mr. Loeb about where he would draw the line, but where would you draw the line? Would you say that every violation of a term of the rental agreement voids the opportunity to make a Fourth Amendment argument? No, Your Honor. I think the key distinction here is that he's claiming a personal Fourth Amendment right. As an unauthorized driver, he doesn't have any connection to the car at all. There is no connection between him and the car. He is not part of the rental agreement. He is an interloper in the rental agreement. Well, it's a pretty big connection that the person who has the right to drive the car told him that he could. That's a connection to the car. Well, that is an authority that she didn't have, that she signed in a couple of different places that she didn't have, and that it is well known that people do not have when they rent cars unless otherwise allowed to do so. But the second thing is that there is no connection. Well, but this is probably not the only time it's ever happened. And I think what the understanding is, well, you're probably going to have trouble with insurance and all if so-and-so gets into an accident. But at least the argument on the other side is that it wasn't unlawful for him to be driving. It may have been or wasn't criminally unlawful. It may have been a breach of contract by Reed, I guess, but not necessarily anything wrongful on his part. Well, it's criminally unlawful, at least in Ohio, Your Honor, as we've pointed out in our brief. And we don't have any statistics on how common it is. And I think the idea that the breach of legal norms that are well known and reasonable within a major commercial industry is something that should give rise to an anti- Breyer. Breyer. I've got that point. Now, what do you think of the rule that we just sort of came up with maybe, or maybe he's been advancing it? The problem with your rule, it seems to me, is that there are cars, houses, apartments, sublets, summer cabins, all kinds of things, which have all kinds of contracts, understandings, leases, et cetera. And over a wide range, who knows what's in them and what can be expected? That's awfully complicated. And therefore, I'm looking for something simple. And the simplest thing that we were discussing, it seemed to me, is to say the following. Where the individual has all the other indicia of the right to control the, and fill in the blank, here it's a car, he's sitting there driving it, that he can assert a right to privacy and has standing unless it is criminal, unless it is a crime. Now, maybe here it was a crime, but that would be the rule, unless he is a criminal possessor, unless he came in as a squatter having broken the window, et cetera. Do you see the point? But the virtue of what he just said, it seemed to me, your opponent here, was that that's pretty simple, comparatively speaking. What do you think? I don't think that's going to be particularly simple, Your Honor. First of all, as I was just mentioning to the Chief Justice, in some jurisdictions this would be a criminal act. Second, I don't know what that rule does with cases, and I'm not making this case up, there's actually a petition before this Court that presents this very question, where, for example, you have an unauthorized driver who also has a suspended driver's license. Simply getting into the car and turning the key is a criminal act. They're not allowed to be doing that. And yet, I take it their rule would create a legitimate expectation of privacy in that circumstance. Breyer, because it's a crime for him to be there, and so, therefore, he falls within the exception. So, Your Honor, I think it's going to actually wind up being much more difficult to apply in practice, and I don't think it makes a particular amount of sense. Breyer, what do you suggest as a rule? You suggest as a rule that what we look to see is under the law, as we've heard, it could extend back to the 18th century, et cetera, under the law of bailments and a lot of other things, does this person have the legal right to be in that particular place where he is doing those things he's doing at the time which are relevant to appearance of ownership? That's your legal rule? He has shown he is no. What is that? What is your legal rule? So the principle that we propose resolves this case, and I don't mean to keep repeating myself here, but where the assertion of Fourth Amendment rights comes from an act that is contrary to the legal norms of a well-established commercial industry. But you've just told Justice Alito that that can't possibly be your test because there are all kinds of provisions in this contract, and people violate some of them, and you would never say that that eliminates any right to privacy. So here you have a case where somebody is in possession and control of the car. That person has been given permission by the renter to be in possession and control of the car. It's true that there's a contract violation, but the contract violation, let's be frank, is not uncommon. Some courts have even said that these contract violations are foreseeable. And it's understood by everybody as relating to insurance liability, not to privacy. So what eliminates the right of privacy that you would normally get by opening up the car of a door and sitting in the front seat and turning the ignition key? Well, Your Honor, I think it will be helpful in a second if I can turn back to and make clear why this is different from other kinds of contract breaches. But to answer your question, you – someone who takes the wheel of a car that they are not authorized to drive is not entitled to treat it as their effect under the Fourth Amendment. But Justice Alito's question is very much related to mine, because there are all kinds of contract terms where if you're sitting behind the wheel of a car and you're driving on gravel, you're in violation of the contract. You know, there are tens of them. So why is this one any different? Why does this one eliminate what you would normally get by being in that car with the permission of the renter? So let me address that in full. It will just take me a second to explain this. As I was saying to Justice Alito, the Fourth Amendment rights are personal. And here, Petitioner, like other unauthorized drivers, simply has no connection to the car at all. He is a stranger to the relationship between budget and read.  Roberts' Mr. Feigin, you keep saying that, but as a matter of property law now and forever, a possessor would have a right to exclude other people but for those with better title. So someone in this position would have a right, I think you'd agree, to exclude someone who's attempting to get in the car to hijack it, carjack it. You'd also have a right to throw out a hitchhiker who had overstayed his welcome. And so I think you're having to argue that the government has a special license that doesn't exist for any other stranger to the car. I don't think so, Your Honor. I don't think this Court has included the idea that even the illegitimate possessor of an item, maybe having some sort of trespass action they could bring, has incorporated that particular rule into the Fourth Amendment. In fact — But that's been the common law of property forever, right? Well, Your Honor, in Rakeis, when the Court said — I'm not talking about thieves. We put that aside. Well, it's interesting that one of the reasons — one of the cases the Court used to reject the car thief scenario in Rakeis actually relied on this trespasser theory that Your Honor is advancing now.  Inconceivable with respect to thieves. That's correct. I'm asking with respect to everybody else. Isn't it the fact that the government is asking for a special license here that would not be available to any other third person? No, Your Honor. I think what we're saying is that that particular principle, to the extent it — Well, then let me ask you this. Do you agree that Mr. Byrd could have excluded a carjacker? I think by virtue of simply being in the car, he probably could have fended off a carjacker and he wouldn't have posed his right to do that. And he would have the right to throw out a hitchhiker as well. But if someone had simply — So why not the government? Well, Your Honor, that is not a principle that this Court has incorporated to create Fourth Amendment rights. I think because it produces very — We have never incorporated private rights into the Fourth Amendment. We've said that we never look to property or tort law to define private rights. If the issue was what the owner versus an authorized user's rights are, we don't do that. We don't look in searches of homes to what the owner of the apartment would say. I would suspect that every owner of the apartment would say, my tenants don't have a right to engage in legal activity. And there may well be contracts that say, my tenants, you can't do illegal activity here. But we have recognized the rights of tenants to privacy in their home because they possess it. Well, not because they possess it, Your Honor, but because, as Justice Ginsburg was pointing out, there actually is a legitimate connection there. They are, in fact, the renter, which brings me back to Justice — Oh, no, but we've recognized overnight guests. We've recognized co-inhabitants that are not licensed in the lease. There are 55 and older communities in certain parts of the country where children under the age of 55 and grandchildren routinely stay. And I doubt very much that we would ever say they don't have that legitimate expectation. So the question that I go is, this will be our very, very first time where we're saying a private contract that doesn't speak about criminal liability, but speaks only about insurance consequences with respect to unauthorized drivers, is creating a Fourth Amendment protection for the police rather than for the person involved. Well, Your Honor, I don't think that's our position. Our position is that there is no legitimate connection to the car here. The contract is important. Everyone agrees on that. He's not claiming he could simply walk into Budget's lot, pick a car he liked, and drive off with it. He's depending, to some degree, on the contract that exists between Reed and Budget. He just wants to ignore the part of the contract that excludes him from its terms. If I could get back to Justice Alito's question, I think the key distinction between this particular breach and other kinds of breaches, if you were a legitimate renter, is precisely that. He's simply not included within the scope of the relationship. A legitimate renter who is driving the car and then violates some term of the rental agreement still has a legitimate connection to the car that everyone agreed was created in the first place. And the question then becomes whether they lose their legitimate expectation of privacy based on that breach. And I think there's two good reasons why they wouldn't. One is, even when a contract declares the agreement to be void upon the violation of a particular term, courts construe that not to have the contract immediately vanish into thin air, but rather to create a right of voidability in the party whose term has been breached. And so I think we would all understand that if someone gets on their cell phone while they're driving a rental car, even if they're not supposed to, unless and until Budget actually tries to dispossess the renter of the car, that the agreement continues in force. Second, even if that were not true, I think there are some legitimate societal understandings that might kick in at that point. If you're stuck in traffic and you're late returning the car, I think everyone understands that when you get there an hour late, you're going to pay Avis the money for the car, they're going to treat the contract as though it continued, they may charge you a late fee, but they're not going to act as though you should have turned into a pumpkin and vanished from the car the instant the clock struck noon. And then what do you do about the cases with the illegal sub lessee or the individuals who occupy a rental unit in violation of a provision that specifies the maximum number of people who can stay there? So I think there probably would be a legitimate expectation of privacy in those cases, and I think they're distinct from this one in two key respects. One is this Court has made crystal clear that homes are different from cars under the Fourth Amendment. One's an effect, the other's a house. The Court has made clear that homes are at the core of the Fourth Amendment, yet cars have dramatically reduced expectations of privacy because they move and are subject to regulation. The second thing is, I don't think in the subletting example or the example of having too many occupants in an apartment, for example, and this is getting back to some of Justice Sotomayor's questions, in those cases you don't have the clear, well-established legal norm that you have in this case. And you don't have to believe me on what the legal norm is. If you look at the amicus brief on their side from the National Motorist Association at footnote 2, they say the rental agreement in this case is familiar to anyone who's ever rented a car. Every one of these cases. Roberts, how important is it that the police have access to the actual agreement? One of the things that I think is very important in these types of cases is the ability to give clear guidance not only to the courts, but to the police, who have pulled the car over in the middle of a situation, that is the most dangerous situation they confront, and, you know, you're saying, well, are they supposed to conduct an inquisition? You know, who gave you permission to use this car, what did she say, all that. Is there anything wrong from your perspective in a rule that is very simple, which is if it's a rental agreement, a rental car, look at the agreement, if it's not an authorized driver, that's it. In other words, it doesn't matter what the positions of the person who rented it is. But would you be arguing that the search was permissible if you didn't have the rental agreement? In the car? Mm-hmm. I think the fact the rental agreement's in the car is very helpful to us. I think we'd still be making the argument even if the rental agreement weren't in the car. First of all, Your Honor, there are ways to figure this out even if the rental agreement isn't in the car. They can follow up by asking questions. They can call the rental car company. Yeah, but, I mean, maybe it's paradoxical. You think, well, if there's no rental agreement, they ought to have greater authority. But the absence of the authorization on the rental agreement that the police can look at is evidence that, you know, this is not your typical situation, however common it might be in practice. It raises doubts that might otherwise not be there even if they don't have the rental agreement. So, Your Honor, if the existence of the rental or the presence of the rental agreement which was required to be in the glove compartment in this case resolves this case, for Your Honor, and the Court doesn't need to go any further than that, I guess one thing I would add is that we can speak to that. I have this problem. You said, well, cars are different than homes. The car exception was created in a case where the police had probable cause. And the decision in Carroll said because it's moving fast, you don't have to get a warrant, but you do have to have probable cause to stop that car. And now we're using the car exception and the probable cause aspect of it has vanished. Well, Your Honor, I think what the Court was getting at with the car exception are still principles that apply when we're doing an expectation of privacy inquiry, because the car exception arises out of the fact that there is a lesser expectation of privacy in cars. And I think one important thing to note about this case is any rule the Court writes that is broad enough to encompass the conduct in which Petitioner engaged in this case would be giving the imprimatur of the Fourth Amendment on what is, I think, really fairly described as wrongful conduct. It's conduct that is. Kagan's depends on knowledge. So suppose that in this case, Burt had been told, don't worry, I have you down as an authorized driver. Would that be different if he thought he was an authorized driver? Feigin. Nothing in this Court's cases to this point have turned on the defendant's knowledge, and I think there are reasons not to have such a rule, and I can get to them in a second. But even if you applied that rule in this case or assumed that that rule exists in this case, Petitioner would still lose. The reason is, yes. Kagan. No, obviously he knew that he was an unauthorized driver, but I'm saying, how about if he didn't? What if he was an authorized driver? What if he thought he was an authorized driver? And you're saying same rule. Feigin. I think we would say same rule, and one of the reasons why, I think the Court could draw the distinction, but there would be a couple of reasons I'd urge the Court not to draw that distinction. One is that it would give more privacy rights to someone who's not diligent than to someone who is. So someone who actually asks, am I on the rental agreement, would have be less likely to have privacy protections. The second thing is that it creates very difficult proof problems. If the defendant gets on the stand and says, well, my friend said so-and-so, that's very difficult for the government to disprove, and there also raises questions of trustworthiness. Well, maybe your friend's a car thief. Maybe your friend's just not a trustworthy person. You shouldn't have been trusting your friend. And the Fourth Amendment doesn't have to accept the defendant's own choices to trust a particular person when they tell them about the question. Sotomayor, and got the – became an authorized driver by lying. I don't have a criminal conviction. And he's listed. What happens then? Is that a violation of the contract sufficient enough to invalidate his expectation of privacy? I think it probably would, Your Honor, because he procured the contract through lying. This gets a little bit back to the Chief Justice's – So we've now criminalized a contract and a contract breach. Well, Your Honor, what we would – no, Your Honor, I don't think that's the right way to think about it. The Fourth Amendment – I know you don't, but I – Well, maybe I'll add something to that assertion, which is that the reason I don't think that's the right way to think about that is because the Fourth Amendment doesn't just protect people's expectations of privacy writ large. It protects persons in their houses and their effects. And so if for someone to claim – So, Mr. Feigin, the rule you want us to write in this opinion is if you are an unauthorized driver of a rental car, even if you have permission of the authorized driver, the police can search the trunk without any probable cause. I would phrase it as the – you do not have enough of a connection to the car to treat it as your effect for purposes of the Fourth Amendment. That would be the effect of the rule. I would add that there are other Fourth Amendment protections that protect against what Your Honor is proposing. First of all, you need reasonable suspicion both to stop the car and for the entire duration of the search. He hasn't challenged the duration of the search in the – sorry, the duration of the stop. He hasn't challenged the duration of the stop in this case because I – presumably because he would lose, because there was reasonable suspicion that supports the entire length of the stop. Mr. Feigin, one thing we're struggling with here is you say some contract terms are so common, kind of an empirical argument, that we should take cognizance of them. On the other hand, you kind of make a normative argument that some contract terms we should disregard, even if they are common, like the cell phone breach. Listening to a cell phone while driving shouldn't forfeit your expectations of privacy as a normative matter, even though empirically they're quite common. The government's been living with the reasonable expectation privacy test for a long time. How much of it is supposed to be empirical, how much of it is supposed to be normative, and how are we supposed to decide? Your Honor, if you don't mind, if I could just take the first part of your question first. I don't think that that's quite our position. Our position isn't about normative, empirical data about how common a particular contract term is. Because I think you've made several times this argument, that it's very common that anyone in the country would know that this is a breach, and that that, therefore, informs the reasonable expectation of privacy test. That's an empirical claim. You've also normatively made the argument that there are some breaches, though common, we should not take cognizance of, we should not forfeit Fourth Amendment rights on, like the cell phone example. And I'm asking you, the government's been living with the Katz rule for 50 years. How much of it's empirical, how much of it's normative, and how are we supposed to decide? Your Honor, I'll get to that in just one minute. No, if you could get to that straight away. Sure. And then I'd appreciate just being able to clear up what our position is here. We are not asking the Court to reject the Katz rule. The Court recognizes that. I know that. I'm not asking you that either, Mr. Fagan. In reasonable expectations of privacy, I think, is a very difficult inquiry for a court to undertake, and a court should be very hesitant before deciding that some social understanding is sufficiently well embedded in society that it justifies constitutional protection under the Fourth Amendment. Where you have the kind of empirical or common-sense data you have here, where the of a major commercial industry, I don't think that societal understandings, to the extent they even exist at all, can really carry the day. But to get back to the sort of premise of your question, we are not saying that certain contract terms should be respected and certain contract terms shouldn't. The distinction that we're drawing here is between somebody who actually has a legitimate connection to the car because the person is the renter of the car or is an authorized driver of the car and someone who owns the car. But is not an authorized driver on insurance, and as a result is not listed on the registration or the insurance card. Does that son, now we're out of the renter situation, we're in the ownership situation, does that son have an expectation of privacy? So if a father tells the son, you can go ahead and drive my car, then he does have a legitimate expectation of privacy, he has a connection to the owner of the car. But why? He's breaking the law. He doesn't have the child listed on the insurance. He hasn't listed the child on the registration. Why is this different than the renter situation? Feigin. Again, Your Honor, it's not about the law writ large. It's about the connection to the car. And if you think about his rules. Kagan that in this case, Reed had said to Burrard, you know, the car is parked outside the house, and she had said, you can, you can, if you want to make a phone call in private, you can go out to the car. And that's what Burrard did. He went out to the car. He sat in the car. He made a phone call for himself. Does he have a reasonable expectation of privacy then, sitting in the car? He hasn't driven it yet. But he's sitting there and using it as a place where he has some privacy. Feigin. I think the answer there would be no for two reasons, and I also don't think that's really what's going on in this case. But the reason why not is, first of all, there's no connection to the owner of the car. Second of all, a fundamental aspect of cars is that they can move, and in that scenario he's not entitled to move it. I don't know that you have a legitimate expectation of privacy. Kagan. I'm sorry. I just didn't understand. So I don't know that you can have a legitimate expectation of privacy placing your person or your possessions in a space, the very function of which is to move around, and you're not allowed to move it. But in this particular case, his only assertion of a reasonable expectation of privacy in the car isn't the reason why he's not allowed to move it. He is the driver of a car that he didn't own, that he didn't rent, and that he wasn't legitimately in. Thank you. Roberts. Thank you, counsel. Two minutes, Mr. Loeb. Loeb. Thank you, Your Honor. The government says that Mr. Byrd's conduct would violate criminal law in Ohio. That is not true, as explained in footnote 2 of our reply brief. The case they cited was where the renter who gave him permission, allegedly gave him permission, is the one who reported the car is stolen. That's certainly very different than here. As to clear rules, our position here is a clear rule in one of two ways. One, that unless it's a criminal trespass or a stolen car, there is an ability to at least invoke the Fourth Amendment. Or second, if anyone has a right to bring a trespass action to exclude others and sue them if they trespass on the property, they should have an expectation of privacy protected by the Fourth Amendment and ability to invoke it. The rule the government deposits here is one picking and choosing between contract terms. The online standard contract lists all these terms, including the unauthorized driver, the cell phone, the driving on gravel. All of them, they say it's voidable. He says some of them are voidable, but some of them we should treat differently. You're picking and choosing between contract provisions. That is a complicated rule which makes no sense. The same kind of logic would lead application to the subletter. For some reason, he says that homes and apartments should be different. This Court should adopt a clear, bright-line rule that unless you're a criminal trespasser, unless you're a car thief, that you have at least the ability to invoke the Fourth Amendment. He makes a distinction between homes and cars. This Court has drawn distinctions which are regarding the nature of a car. It has never said the question of who can invoke Fourth Amendment rights turns on whether you're a person who's present in a house or present in a car. This is a unique argument which this Court should reject. Alitoson What about other criminal activity? So why do you draw a line between a criminal trespasser and somebody who has an open open bottle of alcohol in the car or someone who gets in the car intoxicated or someone who is ingesting other controlled substances in the car? Somebody who doesn't have a license? Rakus and the Court before it in Jones talked about wrongful presence in the car and gave the example in the Rakus footnotes of the car thief and the criminal trespasser. So it's different about those crimes, as those are crimes where your mere presence in the car is criminal itself and you're intruding upon someone else's privacy and dispossessing them of their privacy interests by your criminal presence in the car. Those other examples, often we have cars being used to transport drugs. We have examples of people going over speed limit, people drinking in cars. Those kind of criminal offenses have never been considered as a basis for negating the driver's right to simply invoke the Fourth Amendment. There's a question then, is there reason, suspicion, is there a basis for probable cause to search the car? And that should be the standard here, not finding that there's no ability to invoke the Fourth Amendment at all. Thank you, counsel. The case is submitted.